UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| PATRICK MANIACI, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br>v.<br><br>TRANSWORLD SYSTEMS, INC.,<br><br>        Defendant. | Case No.: 18-cv-370<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Patrick Maniaci is an individual who resides in the Eastern District of Wisconsin (Milwaukee County). Although some of the events referenced in this complaint occurred while Plaintiff resided in Sheboygan County, he currently resides in Milwaukee County.

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff debts allegedly incurred for personal, family or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included agreements to defer payment.

6. Defendant Transworld Systems, Inc. ("Transworld") is a California corporation with its principal place of business located at 2235 Mercury Way, Suite 275, Santa Rosa, California 95407.

7. Transworld is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Transworld is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. Transworld is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

10. Transworld is a "debt collector" as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

11. On or about September 24, 2013, American Mint mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to American Mint. A copy of this letter is attached as Exhibit A.

12. Exhibit A contains the following:

> Your account will be transferred within the next 3 days. Payment should be paid to American Mint LLC for your outstanding balance plus late fees. The next correspondence you receive will be from our collection agency Transworld Systems Inc.

Exhibit A.

13. Exhibit A also contains the following:

2

| Invoice | Date | Description | Level | Amount | Amount Due |
|---|---|---|---|---|---|
| customer-no.: ███3498 | | | | | |
| 0000004 | 03/01/13 | 03/02/13<br>Collector's Choice Offers !<br>JFK's Naval Service | 7 | 85.90 | 85.90 |
| 0000005 | 03/19/13 | 03/20/13<br>Collector's Choice Offers<br>JFK Acceptance Speech<br>JFK's Nomination Speech | 6 | 165.85 | 165.85 |
| 0000006 | 04/08/13 | 05/08/13<br>Collector's Choice Offers !<br>JFK's Peace Corps Speech | 5 | 85.90 | 85.90 |
| Page 1 from 1 | | | | Late Fees<br>**Total** | 17.50<br>**355.15** |

Exhibit A.

14. <u>Exhibit A</u> states that, as of September 24, 2013, Plaintiff's account with American Mint with "customer-no." ending in 3498 had incurred "Late Fees" in the amount of $17.50 and had a "Total" balance of $355.15.

15. The consumer credit account at issue was used only for personal, family, or household purchases.

16. The debt at issue was incurred as a result of a consumer credit transaction other than open-end credit. *See* Wis. Stat. § 421.301(10). The alleged transaction was between a merchant – American Mint – and a customer – Plaintiff – in which personal property – collectors' items – were allegedly acquired on credit and the customer's obligation is payable in installments and for which credit a finance charge – interest – was imposed.

17. On or about August 13, 2014, NCO Financial Systems, Inc. ("NCO") mailed a debt collection letter to Plaintiff regarding the same alleged debt, allegedly owed to

3

"AMERICAN MINT" and assigned a "CREDITOR'S ACCOUNT #" ending in 3498. A copy of this letter is attached to this Complaint as Exhibit B.

18. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

19. Upon information and belief, Exhibit B is a form debt collection letter used by NCO to attempt to collect alleged debts.

20. Upon information and belief, Exhibit B is the first written communication NCO mailed to Plaintiff regarding the alleged debt allegedly referenced in Exhibit B.

21. Exhibit B contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit B.

22. Exhibit B also contains the following:

> CREDITOR: AMERICAN MINT
> CREDITOR'S ACCOUNT #: ▉▉▉▉3498
> CURRENT BALANCE DUE: $ 369.10

Exhibit B.

23. Exhibit B states that, as of August 13, 2014, the "CURRENT BALANCE DUE" on Plaintiff's account was $369.10.

24. Between September 24, 2013 and August 13, 2014, the balance of the alleged debt increased by $13.95.

4

25. Upon information and belief, Plaintiff's account was bearing interest at an annual rate between 4% and 5%. At a 5% annual rate of simple interest, a debt in the amount of $355.15 would bear approximately $15.00 in interest over 323 days. At a 4% annual interest rate, compounded monthly, a debt in the amount of $355.15 would bear approximately $12.00 in interest over a ten-month span.

26. On or about April 12, 2017, Transworld mailed a debt collection letter to Plaintiff regarding the same alleged debt, allegedly debt owed to "AMERICAN MINT" and regarding Plaintiff's "CREDITOR'S ACCOUNT #" ending in 3498. A copy of this letter is attached to this Complaint as Exhibit C.

27. Exhibit C contains the following:

```
DATE: 04/12/17
OUR ACCOUNT #: ████4438
CREDITOR: AMERICAN MINT
CREDITOR'S ACCOUNT #: ████████3498 01032014
CURRENT BALANCE DUE: $416.60
```

Exhibit C.

28. Exhibit C also contains the following:

The account balance may be periodically increased due to the addition of accrued interest or other charges, as provided in the agreement with the original creditor, or as otherwise provided by applicable law.

Exhibit C.

29. The language stating that "the account balance may be periodically increased due to the addition of accrued interest or other charges" is a materially false, deceptive, and misleading statement.

30. Even if the debt was, in fact, bearing interest, the unsophisticated consumer would understand the statement that the balance may increase as a result of "other charges" to mean that the creditor, or the debt collector, could impose late fees or collection fees in addition to the interest that was actually accruing.

5

31. Upon information and belief, neither Transworld, nor American Mint, could or intended to collect a late fee. The balance of Plaintiff's account had already been accelerated, no party was sending monthly statements to Plaintiff, and no further late fees were permissible. *See, e.g., Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 794 (7th Cir. 2003) ("If for whatever reason, the Rizzos did not want to pay the late fees, they were free to pay the loan as accelerated. Such a payment would nullify any obligation to pay post-acceleration late fees.").

32. Also upon information and belief, neither Transworld, nor American Mint, could or intended to collect a collection fee. The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

33. Because, upon information and belief, neither the debt collector nor creditor could or would impose any additional "other charges" under Wisconsin law, the statement that the account may "periodically increase" as a result of these charges is a material misrepresentation. *See Boucher v. Finance System of Green Bay, Inc.*, 2018 U.S. App. LEXIS 1094, at *8-9 (7th Cir. 2018) (statement that account was subject to "interest, late fees, and other charges" when the account was subject to interest but not late fees or other charges was a material false and misleading statement).

34. Plaintiff was confused and misled by Exhibit C.

35. The unsophisticated consumer would be confused by Exhibit C and misled to believe the statement that the account may increase as a result of "other charges" was a threat that the consumer had better pay up before the balance arbitrarily increased.

36. Plaintiff had to spend time and money investigating Exhibit C.

37. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit C.

### *The FDCPA*

38. The FDCPA, 15 U.S.C. § 1692-1692p, is a consumer protection amendment to the Consumer Credit Protection Act, that was adopted as Title VIII of the Consumer Credit Protection Act. *See e.g., Baldwin v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, Case No. 98-C-4280, 1999 U.S. Dist. LEXIS 6933, at *13, 1999 WL 284788, at *4 (N.D. Ill. Apr. 26 1999) ("a key function of the FDCPA provisions of the Consumer Credit Protection Act was to eliminate practices that 'contribute to the number of personal bankruptcies.' ").

39. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin.*

7

*LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same);

*see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

40. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

41. The FDCPA prohibits debt collectors from making confusing statements in a debt collection letter, with the purpose of orally disclosing the information in a non-confusing way. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) ("to authorize debt collectors to comply orally would be an invitation to just the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to.").

42. 15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

43. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of---the character, amount, or legal status of any debt."

9

44. 15 U.S.C. § 1692e(5) specifically prohibits "The threat to take any action that cannot legally be taken or that is not intended to be taken."

45. 15 U.S.C. § 1692e(10) specifically prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt."

46. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

47. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

### *The WCA*

48. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

49. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

50. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

51. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions

10

under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

52. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

53. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

54. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

55. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

11

56. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

57. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

58. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

59. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

60. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

61. Although the FDCPA does not authorize injunctive or declaratory relief, *see Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 507 n.3 (D. Md. Mar. 11, 2013), these forms of relief are available under the WCA. Wis. Stat. §§ 426.109(1); 426.110(4)(e); 426.110(6)(b).

62. The WCA expressly authorizes individual actions to enjoin "any person who in . . . enforcing consumer credit transactions engages in . . . False, misleading, deceptive, or unconscionable conduct in enforcing debts . . . arising from consumer credit transactions." Wis. Stat. § 426.110(2)(c); *see* Wis. Stat. § 426.110(3).

63. The WCA also authorizes "any customer affected by a violation of chs. 421 to 427 and 429 . . . or by a violation of the federal consumer credit protection act . . . [to] bring a civil action on behalf of all persons similarly situated, for actual damages by reason of such conduct or violation, together with penalties as provided in sub. (14), reasonable attorney fees and other relief to which such persons are entitled under chs. 421 to 427 and 429." Wis. Stat. § 426.110(1).

64. The WCA authorizes customers to bring class actions for injunctive relief to cure violations of Wis. Stat. § 427.104(1).

## COUNT I – FDCPA

65. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

66. Exhibit B falsely states: "The account balance may be periodically increased due to the addition of accrued interest or other charges…"

67. No additional "other charges" could actually be imposed under Wisconsin law and Transworld does not impose such charges in the ordinary course of business. *Boucher v. Finance System of Green Bay, Inc.*, 2018 U.S. App. LEXIS 1094, at *8-9 (7th Cir. 2018).

68. A false statement that the balance may increase as a result of other charges is a materially misleading false threat.

69. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10), 1692f, and 1692f(1).

## COUNT II – WCA

70. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

71. Defendant is licensed as a Collection Agency pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

72. Exhibit C falsely states: "The account balance may be periodically increased due to the addition of accrued interest or other charges…"

73. No additional "other charges" could actually be imposed under Wisconsin law and Transworld does not impose such charges in the ordinary course of business. *Boucher v. Finance System of Green Bay, Inc.*, 2018 U.S. App. LEXIS 1094, at *8-9 (7th Cir. 2018).

74. A false statement that the balance may increase as a result of other charges is a materially misleading false threat.

75. Defendant's false threats can reasonably be expected to harass the customer.

76. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT III – WCA

77. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

78. Exhibit C falsely threatens the customer with the imposition of other charges.

79. Defendant violated Wis. Stat. § 426.110(2)(c).

## CLASS ALLEGATIONS

80. Plaintiff brings this action on behalf of a Class, consisting of:

(a) all natural persons in the State of Wisconsin (b) to whom Defendant Transworld sent a collection letter, (c) that included the language: "The account balance may be periodically increased due to the addition of accrued interest or other charges…", (d) while attempting to collect a debt incurred as a result of a consumer credit transaction, (e) where the collection letter was mailed between March 8, 2017 and March 8, 2018, inclusive, (f) and was not returned by the postal service.

81. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

82. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibit C</u> violates the FDCPA and/or the WCA.

83. Plaintiff's claims are typical of the claims of the members of the Class. All are based on the same factual and legal theories.

84. Plaintiff will fairly and adequately represent the interests of the members of the Class. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

85. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## **JURY DEMAND**

86. Plaintiff hereby demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(b) declaratory relief;

(c) injunctive relief;

(d) actual damages;

(e) statutory damages;

(f) attorneys' fees, litigation expenses and costs of suit; and

(g) such other or further relief as the Court deems proper.

Dated: March 8, 2018

                                **ADEMI & O'REILLY, LLP**

          By:    /s/ John D. Blythin
                     John D. Blythin (SBN 1046105)
                     Mark A. Eldridge (SBN 1089944)
                     Jesse Fruchter (SBN (1097673)
                     Ben J. Slatky (SBN 1106892)
                     3620 East Layton Avenue
                     Cudahy, WI 53110
                     (414) 482-8000
                     (414) 482-8001 (fax)
                     jblythin@ademilaw.com
                     meldridge@ademilaw.com
                     jfruchter@ademilaw.com
                     bslatky@ademilaw.com